### SATTERWHITE v. MAGNOLIA PETROLEUM CO. et al.

No. 24039.   Nov. 26, 1935.

R. E. Bowling, for plaintiff in error.

W. H. Francis, Blakeney, Ambrister & Wallace, John Hancock, and Blanton, Curtis & Blanton, for defendants in error.

PER CURIAM. This is an appeal from the district court of Garvin county, Okla. Plaintiff in error was plaintiff below and will be so referred to herein, and defendants in error as defendants.

Plaintiff A. D. Satterwhite owned lands described as the southeast quarter of section 21, township 1 north, range 2 west, in Garvin county, through part of which ran a stream called Salt creek. Upstream about four or five miles was situated an oil field known as the Robinson or Robberson field, in which wells owned and operated by the defendant companies were located. These wells were producing oil at the time this action was brought and had been producing for several years prior thereto. A part of plaintiff's land on the bank of Salt creek was low and fertile. This tract contained about 15 acres, seven acres of which was planted to alfalfa, and on the other eight acres there was a pecan orchard of about 250 trees, of which 140 were of the papershell variety. The rest were native growth. This 15-acre tract was subject to overflow in periods of heavy rainfall.

About the year 1928, and continuing through the year 1929, the alfalfa and pecan trees began gradually dying out, until some time in 1931, when, as shown in the testimony given in the trial court and not rebutted by defendants, the alfalfa and the pecan trees were practically all dead and nonproductive.

On the 6th day of February, 1931, plaintiff filed this action. In his petition it was alleged that each of the defendants owned and operated oil wells in the said oil field; that these wells produced large amounts of salt water, oil, base sediment and other poisonous and deleterious substances, which defendants permitted and allowed to escape and run into Salt creek, thereby polluting the water of that stream and poisoning the lands over which the water ran; that the water of the stream carried said substances down the stream, and that the periodic overflows carried said substances upon and over plaintiff's said alfalfa field and pecan orchard, and that said substances destroyed and killed the alfalfa and pecan trees, and poisoned and polluted the land upon which they stood, making said land totally and permanently sterile and nonproductive, thereby damaging plaintiff in the amount of $2,999.

Defendants answered, admitting their corporate capacities; that they owned and operated producing wells in said field; that said wells or some of them produced salt water and base sediment, but denied specifically that they allowed or permitted any of said substances to escape or run off into the said creek. They averred that they at all times maintained proper, suitable and sufficient pits and receptacles to receive and hold all such waste oil, salt water and base sediment, that the same were so received and held, and thereafter removed and burned, that they had at all times been diligent and skillful and used all due care, diligence, and good faith in operating their said wells, maintaining pits, receptacles and reservoirs as set out above, which received and held all such waste oil, salt water and base sediment; that defendants had not been guilty of any negligence or carelessness, nor violated any law. Defendants further denied that the damage to the plaintiff's land, trees or alfalfa was caused by such substances alleged in his petition, but that the damage was caused by drought, sand washing in around the trees and vegetation, borers in the trees, pruning and cutting back the trees too closely, and burning underbrush in the orchard too near the trees. Defendants also stated that if the damage were caused by the substances alleged in plaintiff's petition, the action is barred by the statute of limitations, but this latter defense is not before this court. It is not presented or argued in the briefs.

Both plaintiff and defendants used a large number of witnesses and the evidence of the opposing parties was conflicting upon most of the issues. Plaintiff's witnesses testified that defendants' wells produced the alleged substances; that such substances were allowed to escape into the creek; that floods carried large amounts of the substances upon and over the orchard and alfalfa field of plaintiff; that said substances destroyed the trees and alfalfa and

permanently ruined the 15-acre tract of land. Defendants' witnesses testified that no such substances were ever allowed to escape from the said wells; that the defendants maintained suitable and sufficient pits, reservoirs and receptacles which received and held all such substances produced by said wells, and that said substances were then burned without being allowed to escape; that some years before the filing of this action a large well, known as the Nelson or Seaboard well, was brought in and was allowed to run wild in said field, as were other wells, and that oil and other evidences thereof were still scattered around the region; that the cause of the damage to plaintiff's pecan trees and alfalfa was drought, sand washing in over the said 15-acre tract, borers in the trees, overpruning and burning of underbrush too near the trees.

The jury inspected the premises, and after deliberation returned their verdict for the defendants. Plaintiff brings this action to this court on petition in error, assigning eight grounds for reversal.

Plaintiff in his brief entirely fails to urge, argue or present authority upon his first, second and sixth assignments of error, and they will therefore be treated as waived. When plaintiff in error fails to set forth in his brief, as required by the rules of this court, an argument and citation of authorities in support of an assignment of error, it will be presumed that said assignment has been waived. Graf Packing Co. v. Pelphrey, 171 Okla. 416, 42 P. (2d) 889, and cases therein cited.

Plaintiff in his third assignment sets out that the trial court erred in giving all the instructions to the jury, to each of which plaintiff duly excepted. We have examined the instructions given, and are of the opinion that these instructions substantially cover the law of the case, and that plaintiff has not shown prejudice to any of his substantial rights. Therefore plaintiff's third assignment does not constitute grounds for reversal of the judgment of the trial court.

Plaintiff's fourth assignment is that the court erred in refusing plaintiff's requested instructions. We have examined said requested instructions and find that they do not advance or present any element of the case not covered by the instructions as given by the court, and that there was no error in refusing to give said requested instructions. It is true that the given instructions do not define or name in words

negligence per se, and that plaintiff requested such an instruction, but the court in instruction No. 4 defines the acts or failure to act on the part of defendants, which, if done, or not done, would, in fact, constitute negligence per se, and in instruction No. 3 states that if the damage to plaintiff were sustained as a direct and proximate result of such acts, or failure to act, or if such failure to act or such acts contributed to the damage to plaintiff, he should recover, and we do not think that the failure of the court to call such acts or failure to act negligence per se was prejudicial to plaintiff, and so constitutes no reversible error.

Plaintiff in his fifth assignment contends that the court erred in not instructing the jury on the law in the case with respect to the recovery of nominal damages, quoting C. O. S. 1921, sec. 6015. The trial court is charged with the duty to instruct the jury on the issues made by the pleadings and the evidence introduced. However, it is not required in the absence of a request to instruct upon any particular phase of issue. Miller et al. v. Tennis, 140 Okla. 185, 282 P. 345; Drum Standish Comm. Co. v. First National Bank & Trust Co., 168 Okla. 400, 31 P. (2d) 843. In Arizona Power Co. v. Racine-Sattley Co., 13 Ariz. 283, 114 P. 558, it was held that "where the defendant claimed damages for delay in delivery, and requested instructions on substantial damages, but none on nominal damages, there was no error in not submitting the issue of nominal damages." Plaintiff in the instant case had the privilege of requesting the court to instruct the jury as to the law on nominal damages, and, failing to do so, will not be allowed to urge that failure as ground for reversal here.

Plaintiff in his seventh assignment merely recites that the trial court erred in refusing to admit competent evidence offered on behalf of plaintiff. It has long been held by this court that assignments of error not clearly pointing out the wrong complained of, or merely reciting some ground as error, are too indefinite and will not be reviewed by this court. Lynch v. Ponca City, 57 Okla. 494, 157 P. 351.

Plaintiff did not point out in his brief any competent evidence offered on his behalf which was excluded by the court, nor that upon such exclusion, proper exception to such rulings by the court were reserved by the plaintiff. Therefore, plaintiff's seventh assignment will not be reviewed here.

In his eighth assignment plaintiff asserts that the court erred in admitting certain

evidence of the defendants. In support of this assignment, plaintiff contends that it was error for the court to admit evidence offered by defendants as to the fact that a well known as the Nelson or Seaboard well had been allowed to run wild some years previously, and had scattered oil and other waste substances along Salt creek. Plaintiff contends that this evidence is incompetent and should not have been admitted for the reason that the only question was whether or not said substances came from the wells of defendants, and what other wells had done was irrelevant. Defendants contend that since plaintiff has shown, or at least had introduced evidence tending to show, that at some time oil and other deleterious substances had been deposited on plaintiff's lands, defendants were entitled to introduce evidence of other possible or probable source of the substances which reached, or could have reached, plaintiff's land. Considering the fact that the court instructed the jury that if any of the said substances came from the wells of defendants, causing damage thereby, defendants would be liable, we believe the above evidence was competent to establish the source of substances complained of by plaintiff.

Plaintiff in his brief insists that the case was tried on the wrong theory of law, saying that evidence and argument all through the case was based on the theory that simple negligence was the basis of recovery on the part of the plaintiff. After careful consideration and study of the testimony, evidence, argument, and the instructions to the jury, we are convinced that the case was presented and submitted to the jury on the basis that if oil, salt water, base sediment or other poisonous and deleterious substances escaped from the wells of defendants and flowed through Salt creek to and upon plaintiff's lands, and caused damage to plaintiff, defendants were liable for the damage done by said substances, regardless of whether or not such substances also escaped from other wells and reached plaintiff's lands.

Finding no error prejudicial to any substantial right of plaintiff, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Tom L. Ruble, E. S. Collier, and L. L. Corn in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Ruble and approved by Mr. Collier and

Mr. Corn, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and CORN, JJ., concur.